# Wolf *against* Clark.

A person who is licensed under the second section of the act of the 6th of February 1830, entitled "an act regulating tin and clock pedlers," is not prohibited by the second section of the act of the same year, entitled "an act for regulating hawkers and pedlers," from travelling from place to place as the agent of a citizen and manufacturer of tin ware, of this state, and selling at public auction in places other than those for which licenses are specifically granted, the tin ware manufactured by his employer. ·

ERROR to *Bedford* county common pleas.

This action was by Joseph Wolf against Samuel Clark, in which the following facts were agreed to be considered in the nature of a special verdict.

This suit is instituted by the plaintiff against the defendant, Samuel Clark, to recover the penalty of 50 dollars imposed by the act of assembly of the 2d of April 1830, passed for regulating hawkers and pedlers. It is admitted by defendant, that on the          day of          A. D. 1833 he exposed to sale and sold by public auction or outcry, in the borough of Bedford, sundry articles of manufactured tin ware.

It is admitted by plaintiff that at the time the said Samuel Clark exposed to sale and sold by public auction the above mentioned tin ware, the said Clark was the regularly constituted agent and salesman of Daniel Holt and Russel S. Chedsey, to sell and dispose of tin ware manufactured by them. That the said Daniel Holt and Russel S. Chedsey are, and were at the time of the sale aforesaid, citizens of the state of Pennsylvania, residing in the borough of Easton, in said state, and doing business therein as manufacturers of tin ware, under the firm of Holt and Chedsey. That the tin ware so as aforesaid sold by the said Samuel Clark, was manufactured by said Holt and Chedsey, at Easton aforesaid, and was sold by said Clark for their benefit, and as their regularly constituted and employed agent and servant. And the said Samuel Clark was also, at the time of the sale aforesaid, regularly licensed, agreeably to the provisions of the second section of the act of assembly passed the 6th of February 1830 "regulating tin and clock pedlers," to hawk and peddle tin ware.

Under these facts, should the court be of opinion that the defendant has subjected himself to the penalty for which this suit is brought, judgment to be entered for plaintiff for the same ; otherwise, judgment to be entered for defendant : each party reserving his right to a writ of error.

The court below (Thompson, president) rendered a judgment for the defendant.

[Wolf v. Clark.]

*Smith,* with whom was *Blodget,* for plaintiff in error.

*Lyon,* for defendant, in error.

The opinion of the Court was delivered by

KENNEDY, J.—The only question presented in this case is, whether a person, who is licensed under the second section of the act of the 6th of February 1830, entitled " an act regulating *tin* and *clock* pedlers," is prohibited by the second section of the act of the 2d of April in the same year, and passed at the same session of the legislature, entitled " an act for regulating hawkers and pedlers," from travelling from place to place within the state, and as the agent of a citizen and manufacturer of *tin ware,* of this state, residing in the borough of Easton, in said state, and selling at public auction in places other than those for which licenses are specifically granted, the *tin ware* manufactured by his employer?

The second section of the act of the 2d of April 1830 declares, that " no person or persons, either with or without license, shall sell or expose to sale any foreign or domestic goods, wares or merchandize, as a *hawker* or *pedler* or *travelling merchant,* by public auction or outcry, in any part of this commonwealth, under the penalty of fifty dollars for each and every offence," subject, however, to a proviso in the following words, " that nothing contained in this act shall prohibit the citizens of this commonwealth, who may manufacture goods, wares or merchandize within this commonwealth, from vending or exposing the same to sale in the same manner as if said act had not been passed into a law.

It is contended on the part of the counsel for the plaintiff in error, who was the plaintiff below, that the terms "hawker or pedler or travelling merchant," employed in this section, embrace " tin and clock pedlers," the exclusive objects of the act of the 6th of February 1830, as well as every other description of pedlers ; and that all are alike prohibited from selling by *public auction.* I, however, am unable to think so. When the subject matter of this act of the 2d of April 1830 is examined and looked into, it will be found to relate to hawkers and pedlers and petty chapmen, as described in the acts of the 30th of March 1784, and of the 28th of March 1799, entitled " an act regulating of hawkers and pedlers," and " a supplement to the same." By these acts, no person shall be licensed as a *hawker, pedler* or *petty chapman,* unless he be a citizen of the United States, and shall be disabled through age, loss of limb or other bodily infirmity, from procuring a livelihood by labour ; and shall have given bond with sufficient sureties to the commonwealth in the sum of 300 dollars, conditioned for his good behaviour during the continuance of his license. After which, the license is to be granted by the courts of quarter sessions, or two of the judges thereof, in vacation : for which 8 dollars must be paid by one who is to travel on foot ; 16 dollars by one who means to use one horse and cart or wagon or other vehicle ; and 25 dollars by him who intends to use

[Wolf v. Clark.]

two horses and a wagon or other vehicle. But the granting of licenses to *tin* and *clock pedlers*, is entirely and exclusively regulated by the act of the 6th of February 1830; and it is remarkable that the regulations, with respect to them, are different in many if not in every particular from those of hawkers and pedlers generally. It is not required by the act of the 6th of February 1830, that *tin* and *clock pedlers* should be citizens of the United States; nor that they should give bonds with sureties conditioned for their good behaviour during their licenses. They are not to obtain their licenses from the courts of quarter sessions, or the judges thereof, as hawkers and pedlers are, but from the clerks of the courts of quarter sessions of the respective counties, upon producing to them satisfactory evidence of their good moral character, and a receipt from the county treasurer for having paid 30 dollars. This sum must be paid in every case, and is larger than that paid in any case by hawker or pedler or petty chapman or travelling merchant. It appears from the acts of assembly on these subjects, that when the legislature intended to include a *tin* or *clock pedler*, that they have either designated him *eo nomine*, or otherwise by describing the employment of *hawking* or *peddling* in *tin* or *japanned ware*, or *clocks*.

In the act of the 2d of April 1830, the term "travelling merchant" seems to be substituted for the term "petty chapman," which is used in the acts of the 30th of March 1784, and of the 28th of March 1799, already noticed. These three acts are all *in pari materia*, and every succeeding act has a relation to all the preceding *in terms*. But the act of the 6th of February 1830 regulating *tin* and *clock pedlers*, although it may be considered a branch of the same subject, has no reference whatever in its terms to the acts of 1784 and 1799 on the subject of hawkers and pedlers; and if *tin* and *clock pedlers* were to be held as embraced within the terms of " hawkers, pedlers, travelling merchants or petty chapmen," then the object of the legislature, as it appears to me, in passing the act of the 6th of February 1830, regulating *tin* and *clock pedlers*, would be defeated; because every pedler would be at liberty to sell *tin* or *japanned ware*, or *clocks*, the same as if he had obtained a specific license therefor, notwithstanding he had only paid the sum of 8 dollars, or 25 dollars at the outside, for his license, instead of 30 dollars according to the requisition of the act of the 6th of February 1830, which must be paid in every case to obtain a license for selling *tin ware* or *clocks*. It is clear, however, that the legislature intended to place *tin* and *clock pedlers* on a distinct and different footing from hawkers, pedlers, petty chapmen or travelling merchants; and that the latter are especially the objects of the provisions and regulations contained in the act of the 2d of April 1830 throughout. The first section of it, in connection with the acts of 1784 and 1799, to which it has express reference, and therefore may be taken as part of it, sets forth the qualifications and condition of such as shall be entitled to receive a license as a hawker, pedler or petty chapman, upon his complying

[Wolf v. Clark.]

with the conditions therein described; and again imposes certain restrictions in the use or exercise of the license after it shall have been obtained. Then comes the second section, upon which the penalty in this case is claimed to be recovered. The words of this section, so far as material to the question under consideration, have been already recited; and although the terms employed in it, to describe those intended to be brought within the prohibition, are sufficiently broad perhaps to embrace *tin and clock pedlers*, as well as all other pedlers, yet I am inclined to believe that the subject matter of the act must govern and determine the meaning and extent of these terms. It is abundantly manifest, after the passage of the act of the 6th of July 1830, that in every other part of the act of April 1830, as well as the acts of 1784 and 1799, that they are not intended to include *tin and clock pedlers*. Beside, as the prohibition contained in this second section of the act of April 1830 is highly penal in its nature, it must be construed strictly, and the terms "hawker, pedler or travelling merchant," used in it, ought not therefore to be extended by construction beyond the plain and obvious meaning of these terms as used in the other parts of the act and the prior acts relating to the same description of persons. If the legislature had intended to embrace *tin* and *clock pedlers* in the prohibition of this section, it seems to me that they would most probably have named them specifically. For this, I think, may be fairly inferred from their having, by a previous act passed during the same session, placed them under different regulations in a distinct class designated by prefixing to the term "pedlers" the name of the *article* which they were to be licensed to sell by hawking and peddling within the state. And having done this, it would have been no more than proper, and indeed necessary, as it would seem, that they should have been mentioned by this specific name, in order, if such were the intention of the legislature, to include and restrain them as well as others from selling by auction, that their design might not fail of being carried into effect through a misapprehension of the true meaning of the legislature.

It has been objected, that if the defendant be not considered as coming within the prohibition of the second section of the act of the 2d of April 1830, still he ought to be confined and restricted in his sales by auction to *tin ware* of which he is the absolute owner; otherwise the spirit and meaning of the act of the 6th of February 1830 will be violated, and of consequence, the defendant not entitled to claim exemption by virtue of his license from the penalty imposed by the second section of the act of the 2d of April 1830. This objection, however, does not seem to be sustained by the terms of the act regulating the granting licenses to *tin* and *clock pedlers*. The first section which is applicable to this objection merely declares, that "no person shall *employ himself*, or be *concerned* in the *business* or *employment* of *hawking* or *peddling* any *kind* of tin, japanned ware or clocks, from place to place without previously having obtained a license so to do," without making any mention whatever of the right

[Wolf v. Clark.]

of property in the tin ware or clocks that shall be sold, or requiring that it shall be vested in the party obtaining the license, more than in that of any other person.    If the license be once duly obtained, the party under it has a right to *employ himself* in selling by hawking and peddling either his own tin ware or clocks, or that of any other person, provided he has the authority of the owner to do so.    Indeed, I think it has ever been generally known, before the passage of the act on this subject, as well as since, that many of those persons employed in selling tin ware by hawking it, were not the absolute proprietors, but employed by the owners to sell it for their use.    Although I am inclined to think, for reasons too obvious to make it necessary to repeat them, that a license granted to hawk and peddle tin ware or clocks is *personal,* and cannot be sold or disposed of to another in any way; yet the legislature do not seem to have exercised the same caution and severity in this respect in forming the act regulating tin and clock pedlers, that they did in the act of 1799 on the subject of pedlers or hawkers; in which the latter are made liable to a penalty of 50 dollars if they lend or otherwise dispose of their licenses.    This circumstance also tends to show how much more anxious the legislature were to limit and restrict hawkers and pedlers in the use of their licenses by inflicting penalties upon them, than they were as to *tin* and *clock pedlers.*

An additional argument may be brought in to support the judgment of the court below, which is, that having shown, as I conceive, that before the passage of the act of the 2d of April 1830, a citizen of this state who was a manufacturer of *tin ware,* residing within it, and having *tin ware* manufactured by him within the state, to be disposed of, might, by means of a tin pedler duly licensed under the act of the 6th of February 1830, have had the same hawked and peddled, and sold by public auction in the state, it follows of course, by the very terms of the proviso to the second section of the same act, that he may still do so; for being a manufacturer and a citizen of the state, he is protected from the penalty, and is not to be prohibited from vending or exposing his *tin ware* to sale in the same manner as if said act had not been passed into a law.    *Facit per alium, facit per se.*

Judgment affirmed.